## March, Appellant, v. Traction Company.

*Negligence—Street railways—Collision between wagon and car.*

What is proper control of horses in driving on a city street depends on the circumstances.

To come to a right-angled street crossing in the dark at a trot is in itself evidence of negligence.

In an action against a street railway company to recover damages for personal injuries, the plaintiff testified that on the night of the accident he was driving on the west side of a street a two-horse delivery wagon, and that at the corner of a cross street it collided with a car of the defendant going east on the cross street. He testified that he looked, and that he had his horses under control. The collision occurred before the wagon reached the tracks, being struck "between the horses' rear and the seat of the wagon." The car was only forty feet away at the time plaintiff said he looked and lighted up in the usual manner. *Held,* that a nonsuit was properly entered.

Argued Jan. 18, 1904.   Appeal, No. 40, Jan. T., 1903, by plaintiff, from order of C. P. No. 3, Phila. Co., Dec. T., 1901, No. 627, refusing to take off nonsuit in case of Osborne March v. Union Traction Company.   Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before McCARTHY, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in refusing to take off nonsuit.

*William M. Crowther*, for appellant.

*Thomas Leaming*, for appellee, was not heard.

PER CURIAM, April 18, 1904:

About 8 o'clock P. M. on April 24, the plaintiff, by his own account came down Twentieth street, on the west side, driving a two-horse delivery wagon at a trot, and at the corner of Chestnut street collided with a car of the defendant company going east on Chestnut street. He testified that he looked but saw no car, and that he had his horses under control. But it is manifest that both statements cannot be true, for the collision occurred before his wagon reached the tracks, being struck " between the horses' rear and the seat of the wagon." The car, according to the testimony, was only forty feet away, was lighted up in the usual manner, and it is plain that if he had looked with due care, as he ought to have looked, he could not help seeing it: Burke v. Union Traction Co., 198 Pa. 497 ; Warner v. Peoples' St. Railway Co., 141 Pa. 615.

If we take the other branch of the question, the speed at which plaintiff was driving, the case is equally clear. What is having horses under control is a matter that varies with the circumstances. They might be under control so far as relates to running away or to collisions with teams coming in an opposite direction, and yet not under control, as the event proved, for the avoidance of such a collision as occurred. To come to a right-angled street crossing in the dark at a trot is in itself strong evidence of negligence. Plaintiff could only see a few feet westward on Chestnut street, the direction in which cars would come, until he passed the house line. He was bound to know, therefore, that it was a point of danger, and not only to keep such a lookout as would inform him of the approaching car, but also such control of his team as would enable him to stop on short notice of a threatened collision. It is clear from his own testimony that he did neither.

Judgment affirmed.