## Walker, Appellant, v. Reading Transit and Light Company.

Argued December 13, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Fletcher W. Stites,* for appellants.

*Franklin L. Wright,* and with him *Charles Townley Larzelere,* for appellee.

OPINION BY KELLER, J., January 25, 1929:

These appeals grew out of a collision between an automobile and a trolley car. Appellants were re-

spectively the owner and driver of the automobile. They recovered verdicts which the court below subsequently set aside, and judgments non obstante veredicto were entered for the defendant.

Conceding the negligence of the defendant company, as under the verdict must be done, we agree with the court below that the contributory negligence of the driver of the automobile was so clear as to require it to rule, as matter of law, that there could be no recovery against the defendant in either action.

The accident occurred at the intersection of the Ridge Pike and Church Road; the former runs north and south; the latter east and west. Defendant's trolley track is located on the south side of Church Road, as far as its junction with Ridge Pike. There it turns southward, crossing Ridge Pike, and follows the west side of the pike.

Summers was driving Walker's racing automobile northward on Ridge Pike, going from Philadelphia to the Pottstown races. He approached Church Road and the trolley crossing on a sharp up grade. He had traveled the road before and knew there was a trolley line along it, and saw the crossing when he was a hundred feet away.

As he approached the crossing, when he was about 75 or 100 feet away, he said, he slowed down and blew his horn. He looked both ways and could not see anything. His view on the right was obstructed by a bank, which grew less as he neared the crossing, and by a house, set back thirty feet from Ridge Pike, and about twenty-five feet from Church Road, and by some trees and bushes. He proceeded until he was eight or nine feet from the car track when, he said, the car swung out on him, before he knew anything. He swung the automobile to the right, and the side of the car hit the automobile, damaging it and injuring him.

If when he was 75 to 100 feet away from the crossing his view was obstructed by the bank, house and

bushes so that he could not see what, if anything, was approaching on Church Road, it was his duty to look again and, if necessary, listen before he went on the track or came so near it that a car on it could hit him, and to have his automobile under such control that he could stop it in time to escape injury if a trolley car was coming. If his view continued to be so obstructed that he could not see down the track without putting himself into danger, it was his duty to stop, if he could not otherwise be sure that a car was not approaching on the track: Smathers v. P. & B. St. Ry. Co., 226 Pa. 212, 215.

It is not necessary to cite extracts from the numerous decisions on the subject. We refer, inter alia, to Weber v. Phila. R. T. Co., 256 Pa. 595; Laudenberger v. Easton Transit Co., 261 Pa. 288; Di Orio v. Phila. R. T. Co., 260 Pa. 399; March v. Union Traction Co., 209 Pa. 46; Knaell v. P. M. & B. Ry. Co., 83 Pa. Superior Ct. 355; Mellett v. Reading Transit Co., 55 Pa. Superior Ct. 465; Bready v. Phila. R. T. Co., 68 Pa. Superior Ct. 298; Trout v. Altoona & Logan Valley Electric Ry. Co., 13 Pa. Superior Ct. 17; McCartney v. Union Traction Co., 27 Pa. Superior Ct. 222. They may be summarized in two conclusions: If the situation was such that by looking as he approached the trolley crossing he could see the car coming, it was his duty to stop, for it was unquestionably so near the crossing that it was negligence to attempt to pass it. If, on the other hand, when he approached the crossing his view was obstructed so that he could not observe the track to his right without putting himself in danger, it was his duty to stop and make sure that the track was clear, before placing himself where he was in peril, and he was bound to have his car under such control that he could do so.

In either event he failed to perform his duty and has himself to blame for the injuries which resulted.

The owner of the car had employed Summers to drive it to Pottstown. He is chargeable with his agent's negligence.

The assignments of error are overruled and the judgment in each case is affirmed.